**BOOTH et al. v. MONAHAN, Deputy Commissioner.**

No. 928.

District Court, D. Maine, S. D.

Oct. 16, 1930.

William B. Mahoney, of Portland, Me., for plaintiff.

Frederick R. Dyer, U. S. Atty., and William M. Nulty, Asst. U. S. Atty., both of Portland, Me., for defendant Monahan.

Edward J. Harrigan, of Portland, Me., for intervenor Gorham.

PETERS, District Judge.

This is a bill in equity brought to set aside the award of a Deputy Commissioner made under the authority of the Longshoremen's and Harbor Workers' Compensation Act (33 USCA §§ 901–950).

It appears that the Deputy Commissioner investigated the claim, heard testimony in relation to the extent of the injury complained of by the intervener, Festus Gorham, and made an award under which the insurance carrier was directed to pay to the claimant, the intervener, compensation for temporary total disability for about six months in 1929, and $18 per week thereafter for permanent partial disability, estimated to be 60 per cent., loss of use of right leg, for 172 9/10 weeks, giving credit for $1,321.71, paid by the carrier.

The essence of the complaint by the insurance carrier in this bill in equity is that the award of the Deputy Commissioner for an impairment of the usefulness of the claimant's leg, fixed at 60 per cent., was arbitrary and not supported by evidence.

I have reviewed the evidence before the Deputy Commissioner with a view to discovering whether he had evidence before him upon which he could base his finding of fact that the claimant "suffered 60 per cent. permanent loss of use of his right leg."

This is not an appeal, nor a review of the proceedings of the Deputy Commissioner. The statute authorizes nothing of that kind. If there was any evidence before the commissioner upon which he could base his finding of fact, the weight of it is for him and not for this court, which is not authorized to interfere unless the proceeding or the award is clearly contrary to law. The findings of fact of the Deputy Commissioner will not be disturbed by the court if there is some competent evidence to sustain them. Obrecht-Lynch Corp. v. Clark (D. C.) 30 F.(2d) 144; Joyce v. U. S. Deputy Commissioner (D. C.) 33 F.(2d) 218.

Looking at the record from this point of view it is clear that there was evidence to sustain the opinion of the Deputy Commissioner that claimant had sustained an impairment of the usefulness of his right leg estimated by the Deputy Commissioner as 60 per cent. To be sure, none of the medical

witnesses used that figure in describing the impairment; in fact, where any figures were used by the medical witnesses, they were not over 40 per cent.; but, the fixing of the percentage was for the Commissioner after hearing the opinions of the doctors. He was not limited to 10 per cent. as one doctor described it, or to 40 per cent. as it appeared to another doctor, where other medical testimony described the extent of the disability very definitely in relation to the work the claimant had to do and his activities in earning a livelihood. Dr. Abbott, whose qualifications were admitted by plaintiffs and who was the doctor who performed the surgical operation upon the kneejoint, and the only doctor who knew the condition inside the joint, testified that the injury was to the internal structure of the kneejoint. It seems the claimant had struck his knee against a tub or bucket weighing about three hundred pounds, while working in the hold of a ship. Dr. Abbott testified that some of the cartilages were torn, and that the lower end of the upper bone of the leg was denuded of cartilage. The operation consisted of removing the torn cartilages. The leg did not heal for many months, although no infection was present. The doctor testified that the claimant was fit for a light job of work where he could sit down for part of the time, but that it would be hazardous to engage in heavy work. He said, among other things: "He is completely disabled for any rough work such as a quarryman or a longshoreman would have to do in storing materials in the hold and loading or unloading cars, in any position, through failure to move that leg quickly he might fall and stumble."

"Q. What would be the result of such a fall? A. I think it would ruin the knee completely. It isn't in very good condition now. Just fair."

The doctor had testified previously that the leg had reached its maximum point of recovery.

Dr. Lamb, another doctor specializing in orthopedic surgery, testified that in his opinion claimant could not do heavy work, that the extent of his permanent impairment depended upon what work he had to do. "He can't do heavy work and if he can't do heavy work his knee is totally impaired for heavy work. I should say even on light work it would show some impairment."

"Q. Striking a happy medium, as we might say, what would you say was a fair estimate of the extent of his permanent impairment? A. That is a little difficult to say. I should say his knee was probably thirty-five or forty per cent. impaired for any sort of work."

The plaintiffs regard this testimony as limiting the impairment to 35 or 40 per cent., but I should say that the Deputy Commissioner was justified in regarding this testimony as meaning, in the opinion of the witness, that the claimant was 35 per cent. or 40 per cent. impaired for any sort of work, light or heavy, but totally impaired for heavy work.

The testimony of the doctor, to whom the patient was referred for "impartial examination" is to the effect that the permanent partial disability was 10 per cent., but this clearly meant disability for all purposes and not in particular relation to the occupation of the claimant, and I consider that the Deputy Commissioner has the right to fix the disability with reference to the occupation of the claimant as a longshoreman and not as a clerk or office worker for which he may have no capacity whatever. The Deputy Commissioner has a right to disregard the percentage figures given by any of the doctors and to use his own judgment as to the amount of impairment of the claimant's leg considered with reference to his occupation, and that judgment, when based upon evidence such as found here, is conclusive, and cannot be disturbed by this court, even if a judge would come to a different conclusion on the same evidence. It is highly probable that half a dozen persons hearing the same evidence would all have used different figures in describing the percentage of the impairment, which shows the necessity of having the judgment of some one person conclusive; and in these cases the statute has designated the Deputy Commissioner as that person.

I can see no reason why he did not have jurisdiction nor find any cause for enjoining the proceedings as asked for in the bill. The bill is to be dismissed, with costs.